# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CABINETS TO GO, LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>QINGDAO HAIYAN REAL ESTATE GROUP CO., LTD (青岛海燕置业集团有限公司), QINGDAO DROUOT WOOD INDUSTRY CO. LTD (青岛德鲁奥木业有限公司), ALNO INDUSTRY SDN BHD, and SCIOTO VALLEY WOODWORKING, INC., doing business as VALLEYWOOD CABINETRY,<br><br>　　　　Defendants. | Case No. 3:21-cv-00711<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Jeffery S. Frensley |

## FIRST AMENDED COMPLAINT OF CABINETS TO GO, LLC

Cabinets To Go, LLC, ("Cabinets To Go" or "Plaintiff") by and through counsel, brings this action against Qingdao Haiyan Real Estate Group Co., LTD, Qingdao Drouot Wood Industry Co., LTD, Alno Industry SDN BHD, and Scioto Valley Woodworking, Inc., d/b/a Valleywood Cabinetry, (collectively, "Defendants"). For the reasons set forth below, Cabinets To Go, LLC, is entitled to a judgment against Defendants and all other available relief.

### Parties, Venue, and Jurisdiction

1. Cabinets to Go is a Florida limited liability company.

2. The sole member of Cabinets to Go is F9 Brands, Inc. F9 Brands, Inc. is a Delaware corporation and its principal place of business is located at 1124 W. McEwen Drive, Franklin, Tennessee, 37067.

3. Defendant Qingdao Haiyan Real Estate Group Co., LTD, is a Chinese company with a principal place of business located at Jihongtan Town, Chengyang District, Qingdao City, PR China. On information and belief, this defendant is known in China as 青岛海燕置业集团有限公司 and has a registered address at 中国青岛市城阳区棘洪滩镇驻地. This defendant shall be referred to in this First Amended Complaint as Haiyan.

4. Haiyan owns and operates Alno Industry SDN BHD ("Alno"), which is located at Plot 37, Furniture Industrial Estate, Jalan Sungai Baong, 142 Sungai Bakap, Seberang Perai Selatan, Penang 14200, Malaysia.

5. Haiyan has the authority to exert complete control, and does exert such control, over every aspect of Alno. Haiyan representatives in China regularly communicated with Cabinets to Go regarding purchase orders, manufacturing practices, and shipping requirements for products allegedly made at Alno.

6. Haiyan owns and operates Qingdao Drouot Wood Industry Co., LTD, which is located at Jihongtan Community, Jihongtan Street, Chengyang District, Qingdao City, PR China (200 meters south of National Highway 204). On information and belief, this defendant is known in China as 青岛德鲁奥木业有限公司 and has a registered address at 中国青岛市城阳区棘洪滩街道棘洪滩社区（204国道南200米）. This defendant shall be referred to in this First Amended Complaint as Drouot.

7. Haiyan has the authority to exert complete control, and does exert such control, over Drouot.

8. Haiyan has a wholly owned sales and distribution division, Defendant Scioto Valley Woodworking, Inc., d/b/a Valleywood Cabinetry ("Valleywood"), located at 801 West 2nd Street, Waverly, Ohio, 45690.

9. Haiyan has the authority to exert complete control, and does exert such control, over every aspect of Valleywood. Indeed, Haiyan offered to sell some or all of Valleywood to Cabinets to Go in early 2021.

10. Each of these separate divisions of Haiyan are operated as one entity where Haiyan and its representatives located in China exercise complete control over all of the other entities. Thus, Haiyan, Alno, Duouot, and Valleywood are all essentially the same entity, and acted as agents and/or instrumentalities of each other and acted in concert together.

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this matter implicates the United Nations Convention on Contracts for the International Sale of Goods ("CISG").

12. Additionally, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. The Court has personal jurisdiction over all Defendants because they continuously and systematically conducted business with Cabinets To Go, which they knew to be based in Tennessee. Defendants contracted to supply goods to Cabinets to Go in Tennessee and transacted business in Tennessee through the regular shipment of goods to Cabinets to Go in Tennessee. Defendants exercised control over the products they manufactured for Cabinets to Go by shipping those products from Malaysia to Tennessee knowing that the products would be delivered in Tennessee. Defendants derived substantial revenue from their contracts with Cabinets to Go. Defendants communicated with Cabinets to Go employees in Tennessee. The claims in this case arise out of Defendants' contracts performed in and business conducted with Cabinets to Go in Tennessee.

14. Additionally, the Court has specific personal jurisdiction over all Defendants because they jointly and severally caused harm to Cabinets to Go in this district, as detailed herein.

15. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Facts**

16. This case arises out of the breach by Defendants of their contractual duty to report truthfully and accurately the country of origin of the kitchen and bath cabinets and cabinet parts they supply to Cabinets to Go. This issue is highly material to Cabinets to Go both reputationally - because plaintiff, as the importer, has the statutory duty to report accurately to Customs - and financially because plaintiff, as the importer, is responsible for the payment of tariffs, antidumping duties ("AD"), and countervailing duties ("CVD"), which can vary substantially between countries of origin.

17. For instance, there is no tariff, AD, or CVD assessed on cabinets and cabinet parts manufactured in Malaysia. However, cabinets and cabinet parts manufactured in China are subject to AD and CVD, which can be in excess of 200%, depending on the individual supplier.

18. Additionally, Cabinets To Go, as an importer, is required to verify, as a condition of importation, that all products containing composite wood meet the requirements of Title VI of the Toxic Substances Control Act ("TSCA Title VI") and corresponding standards promulgated by the Environmental Protection Agency ("EPA").

19. To satisfy its due diligence obligations, Cabinets To Go mandates suppliers provide, for each shipment, copies of all TSCA Title VI compliance documentation, including testing and traceability documentation for all composite wood utilized in the manufacture of its

products. This documentation is provided prior to Cabinets To Go's acceptance of the products for delivery to the carrier for shipment.

20. In this case and as discussed in more detail below, Haiyan manufactured cabinets and cabinet parts in China and then attempted to pass them off as manufactured in Malaysia, providing inaccurate TSCA Title VI documentation, which has caused Cabinets to Go to reject substantial shipments of products.

21. Cabinets to Go is the leading retailer in the United States of kitchen and bath cabinets, countertops, flooring, closets, and related accessories. Its 89 stores are located throughout 38 states in the United States, with 9 more stores in the process of opening by the end of 2021. Cabinets to Go has plans to open an additional 10 to 15 stores in 2022.

22. Cabinets to Go obtains products from various suppliers around the world, including suppliers in Malaysia. Each supplier is responsible for producing specific styles and colors of cabinets, in amounts sufficient to fill purchase orders.

23. One of its suppliers is Haiyan. Haiyan has a mill located in Malaysia, which operates under the name Alno, that is supposed to manufacture certain products for Cabinets to Go.

24. Cabinets to Go has had a long standing business relationship with Haiyan. For over ten years, Haiyan has supplied products to Cabinets to Go in Tennessee.

25. Cabinets to Go certainly trusted Haiyan to supply product that was compliant with Haiyan's contractual obligations. These obligations include certification that the products are manufactured in Malaysia.

26. There is a substantial amount of time between when Cabinets to Go places an order with Haiyan and when Haiyan actually delivers the product to Cabinets to Go.

27. After Cabinets to Go places an order for product, Haiyan manufactures it. Then, the manufactured product is placed on a container ship and shipped to Savannah, Georgia. The product is then shipped by rail from Savannah to Huntsville, Alabama and ultimately delivered to Cabinets to Go's warehouse in Lawrenceburg, Tennessee. Altogether, this process takes four to eight months.

28. A significant aspect of Cabinets To Go's success is its ability to provide RTA, or "ready to assemble," cabinets to customers within one to two weeks from date of order. To meet these customer expectations, Cabinets To Go maintains the equivalent of approximately twenty-two weeks of inventory at its distribution center in Lawrenceburg, Tennessee.

29. This gives Cabinets to Go a substantial competitive advantage over other cabinet suppliers because it is able to fill orders for cabinets in about one to two weeks.

30. Cabinets to Go depends on maintaining its supply chain and receiving products from Haiyan in a timely manner.

31. Haiyan, as one of Cabinets to Go's main suppliers, is well aware of the need for timely manufacturing and delivery of products.

32. In February and March 2021, Cabinets to Go placed thirteen (13) purchase orders with Haiyan and paid Haiyan $793,692.77 for products under those purchase orders. All products under these purchase orders were to be manufactured in Malaysia and then shipped from Malaysia to Lawrenceburg.

33. As part of the quality control process, Cabinets to Go hires inspectors who are located at the manufacturing facilities of Haiyan in Malaysia. On or around July 28, 2021, one of the inspectors discovered that Haiyan was shipping products to Cabinets to Go that were actually manufactured in China in breach of the requirement that all products be manufactured in Malaysia.

21815724.v3

6

Case 3:21-cv-00711    Document 26    Filed 11/03/21    Page 6 of 15 PageID #: 82

As a result, these cabinets and/or cabinet parts were subject to AD and CVD in excess of 200% and did not comply with the agreement between the parties.

34. In an effort to conceal the fact that the products were actually manufactured in China, Haiyan provided to Cabinets To Go documentation that showed composite wood materials (MDF and plywood sheets) were shipped from China to Malaysia specifically for the purpose of manufacturing cabinets in Malaysia. In reliance on Haiyan's representations and documentations that composite wood materials were shipped to Malaysia, Cabinets To Go was fraudulently induced to accept the aforementioned purchase orders for delivery to the carrier.

35. Cabinets to Go then identified an additional twenty (20) purchase orders for products that were supposed to be manufactured in Malaysia but were likely manufactured in China. Haiyan would not certify that the products under these purchase orders were in fact manufactured in Malaysia. These purchase orders represented $1,201,136.96 worth of products.

36. Although Cabinets to Go has not yet paid for the products in these purchase orders, Cabinets to Go is unable to accept these products without Haiyan's certification as to country of origin.

37. Under the agreement between Haiyan and Cabinets to Go, Haiyan is contractually obligated to provide this certification that all products were manufactured in Malaysia.

38. When Cabinets to Go imports products into the United States, it must certify, among other things, the place of manufacture of the product to the United States government.

39. Because Haiyan would not certify that the products listed in the purchase orders discussed above were manufactured in Malaysia, Cabinets to Go could not legally import the products under those purchase orders without amending its customs declarations and incurring costs related to additional tariffs.

40. Because Haiyan would not certify that the products listed in the purchase orders discussed above were manufactured in Malaysia, Haiyan was in breach of its contractual obligations to Cabinets to Go under each of the purchase orders discussed above.

41. The products ordered under the purchase orders described above were placed in shipping containers for shipment by sea to the United States.

42. In mid-August 2021 and after being provided with this information and after some of these products were already in transit to the United States, Cabinets to Go asked Haiyan to certify that the products included in all of the purchase orders identified above were indeed manufactured in Malaysia and not China.

43. On or about August 24, 2021, Jason Delves, CEO of Cabinets To Go, received a telephone call from Amanda Li and Sabrina Lee, two representatives of the defendants, who advised they could not certify as to the country of origin because the products and/or component parts of the products, had been manufactured in China.

44. Over the next several weeks, thirteen containers of products listed in the purchase orders discussed above (the "13 Containers") arrived in the United States.

45. Cabinets to Go immediately attempted to return the 13 Containers as they arrived, but the shipping company refused to take them back. Cabinets to Go then began searching for a bonded warehouse to store the 13 Containers, but could not locate one.

46. On September 27, 2021, U.S. Customs and Border Protection ("CBP") gave notice to Cabinets to Go that it must immediately import three of the 13 Containers or CBP was going to seize those three containers.

47. As a result of that notice, Cabinets to Go imported the 13 Containers. To do so, Cabinets to Go amended its customs declaration regarding the country of origin for the products in the 13 Containers, as required by law.

48. As a result of the amended customs declaration, the products in the 13 Containers are now subject to the tariffs associated with importing products from China instead of Malaysia. The additional cost to Cabinets to Go under these additional tariffs is over $650,000.

49. With respect to the containers of products that did not arrive in the United States, those containers have been returned because Cabinets To Go had no choice but to refuse to accept those containers of products, which were already in transit on a container ship to the United States when Haiyan's deception was discovered.

50. All of the products ordered under all of the purchase orders described above are needed by Cabinets to Go to be able to maintain its supply chain and be able to fill orders. Without these shipments, Cabinets to Go will lose sales and business.

51. As a result, Cabinets to Go has not only suffered a substantial financial loss but is also going to lose future business a result of this severe disruption to its supply chain. Haiyan is liable not only for the amounts already paid to Haiyan but also for the future lost sales directly caused by Haiyan's breach.

## Count 1

## Breach of Contract (CISG)

52. Cabinets to Go incorporates all of the above allegations as if fully rewritten herein.

53. Cabinets to Go and Haiyan had an agreement relating to the purchase of Malaysian-manufactured goods.

54. This agreement, and the purchase orders made thereunder, are governed by the CISG because the parties are signatories to the CISG. *See* Pt. I, Art. 1. This agreement, and the purchase orders made thereunder, constitute enforceable contracts under the CISG. *See* Pt II, Arts. 14, 18, 23.

55. Under the terms of the contracts, Haiyan was obligated to satisfy Cabinets to Go's purchase orders with products that had been manufactured in Malaysia.

56. Cabinets to Go clearly and repeatedly communicated to Haiyan, orally and in writing, that the products it ordered, as well as the component parts used to complete the products, had to be manufactured in Malaysia. Cabinets to Go expressly stated that it would not accept any products that were manufactured in China, nor would it accept any products that included Chinese-manufactured components. This was a material term of the contracts.

57. Haiyan breached the contracts with Cabinets to Go by attempting to satisfy Cabinets to Go's purchase orders with products that did not meet Cabinets to Go's specifications. Specifically, Haiyan attempted to repackage Chinese-manufactured products in a manner that suggested they were manufactured in Malaysia and ship them to Cabinets to Go.

58. This breach was fundamental because it resulted in such detriment to Cabinets to Go as substantially to deprive it of what it was entitled to expect under the contracts. *See* Part III, Chp. 1, Art. 25.

59. As a result of Haiyan's breach, Cabinets to Go has suffered damages and will continue to suffer damages. *See* Part III, Chp. II, Sec. II, Art. 45; Part III, Chp. V, Sec. II, Art. 74. Art. 74. III, 45.

## Count 2

### Breach of Contract (Tennessee Common Law)

60. Cabinets to Go incorporates all of the above allegations as if fully rewritten herein.

61. Cabinets to Go and Haiyan had an agreement relating to the purchase of Malaysian-manufactured goods.

62. This agreement, and the purchase orders made thereunder, constitute enforceable contracts under Tennessee law.

63. Haiyan breached the contracts with Cabinets to Go by attempting to satisfy Cabinets to Go purchase orders with products that did not meet Cabinets to Go's specifications. Specifically, Haiyan attempted to repackage Chinese-manufactured products in a manner that suggested they were manufactured in Malaysia and ship them to Cabinets to Go.

64. As a result of Haiyan's breach, Cabinets to Go has suffered damages and will continue to suffer damages.

## Count 3

### Breach of Warranty (CISG)

65. Cabinets to Go incorporates all of the above allegations as if fully rewritten herein.

66. Cabinets to Go and Haiyan had an agreement relating to the purchase of Malaysian-manufactured goods.

67. This agreement, and the purchase orders made thereunder, are governed by the CISG because the parties are signatories to the CISG. *See* Pt. I, Art. 1. This agreement, and the purchase orders made thereunder, constitute enforceable contracts under the CISG. *See* Pt II, Arts. 14, 18, 23.

68. Under the terms of the contracts, Haiyan was obligated to satisfy Cabinets to Go's purchase orders with products that had been manufactured in Malaysia.

69. Haiyan breached the warranties made to Cabinets to Go when they attempted to supply Cabinets to Go with non-conforming goods that did not meet the quality, product description, or labeling specifications of the contracts. *See* Part III, Chp. II, Sec. II, Art. 35, 36.

70. Haiyan knew or had reason to know that the goods they intended to ship to Cabinets to Go in satisfaction of the purchase orders did not conform to contract specifications.

71. As a result of Haiyan's breach, Cabinets to Go has suffered damages and will continue to suffer damages. *See* Part III, Chp. II, Sec. II, Art. 45; Part III, Chp. V, Sec. II, Art. 74. Art. 74. III, 45

### Count 4

### Breach of Warranty (Tennessee Common Law)

72. Cabinets to Go incorporates all of the above allegations as if fully rewritten herein.

73. Cabinets to Go and Haiyan had an agreement relating to the purchase of Malaysian-manufactured goods.

74. As part of their agreement, Haiyan made an affirmation of fact that they would be able to supply goods that were manufactured in Malaysia. Haiyan further made an affirmation that the goods would not include any parts made in China.

75. This affirmation was intended to induce Cabinets to Go to purchase goods from Haiyan. After all, Cabinets to Go had clearly communicated their desire to purchase goods that would not be subject to the 200% AD and CVD for Chinese-made goods.

21815724.v3
12
Case 3:21-cv-00711    Document 26    Filed 11/03/21    Page 12 of 15 PageID #: 88

76. Cabinets to Go was induced to purchase goods from Haiyan based on its affirmations regarding its ability and willingness to supply goods that were not manufactured in China or made with Chinese-produced parts.

77. These affirmations were patently false, given Haiyan's attempt to repackage and relabel Chinese-made goods in a manner that suggested they were manufactured in Malaysia, then ship them to Cabinets to Go in satisfaction of their purchase orders.

## Count 5

**Deceptive Business Practices under the Tennessee Consumer Protection Act ("TCPA")**

78. Cabinets to Go incorporates all of the above allegations as if fully rewritten herein.

79. Cabinets to Go is a person under the TCPA, Tenn. Code Ann. § 47-18-103(14).

80. Cabinets to Go purchased and attempted to purchase goods from Haiyan.

81. By filling the purchase orders and shipping products to Cabinets to Go, Haiyan represented that the cabinets were of a particular standard, *i.e.* that they were manufactured in Malaysia. Such representations violated the TCPA, Tenn. Code Ann. § 47-18-104(7), because the products at issue were not manufactured in Malaysia.

82. As a result of Haiyan's deceptive act of representing goods manufactured in China as goods manufactured in Malaysia, Cabinets to Go has suffered an ascertainable loss of money as required under Tenn. Code Ann. § 47–18–109(a)(1) for the amounts already paid to Haiyan for the misrepresented products and for the loss of business as a result of the misrepresented product.

83. Haiyan's deceptive acts were willful and knowing under Tenn. Code Ann. § 47–18–109(a)(3) and (4) because Haiyan had actual knowledge that the cabinets were manufactured in China.

84. Under Tenn. Code Ann. § 47–18–109, Cabinets to Go is entitled to its actual damages, treble damages, reasonable attorneys' fees, and/or punitive damages.

WHEREFORE, Plaintiff, Cabinets to Go seeks the following relief:

1. An award of compensatory and consequential damages for breach of contract and breach of warranty;

2. An award of punitive or treble damages for violation of the Tennessee Consumer Protection Act;

3. An award of attorney's fees and costs;

4. Trial by jury; and

5. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

*V. Brandon McGrath*

| | |
|---|---|
| V. Brandon McGrath | Charles E. Dorkey, III |
| Dentons Bingham Greenebaum LLP | Dentons US LLP |
| 312 Walnut Street, Suite 2450 | 1221 Avenue of the Americas |
| Cincinnati, Ohio 45202 | New York, NY 10020 |
| Telephone: (513) 455-7641 | Telephone: (212) 905-8330 |
| Email: brandon.mcgrath@dentons.com | Email: charles.dorkey@dentons.com |
| | |
| Sarah Laren | H. Buckley Cole (BPR #11811) |
| Dentons Bingham Greenebaum LLP | PEPPER LAW, PLC |
| 300 West Vine Street, Suite 1200 | Nashville, Tennessee 37219 |
| Lexington, KY 40507 | Telephone: (615) 256-4838 |
| Telephone: (859) 288-4635 | Fax: (615) 292-9613 |
| Email: sarah.laren@dentons.com | Email: bcole@pepperlawplc.com |

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

At this time, there are no Defendants in the Court's CM/ECF electronic filing system.

I hereby certify that a true and correct copy of the foregoing document have been served on the below-listed person(s), via U.S. Mail, postage prepaid on November 3, 2021.

SCIOTO VALLEY WOODWORKING, INC.
516 Station Avenue
Cincinnati, OH 45215

*/s/ V. Brandon McGrath*

21815724.v3
15
Case 3:21-cv-00711   Document 26   Filed 11/03/21   Page 15 of 15 PageID #: 91