# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CABINETS TO GO, LLC,

      Plaintiff,

  vs.

QINGDAO HAIYAN REAL ESTATE
GROUP CO., LTD, et al.,

      Defendants.

Case No. 3:21-cv-00711

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Jeffery S. Frensley

---

## PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

---

Cabinets To Go, LLC ("Plaintiff" or "Cabinets To Go"), by and through counsel, respectfully submits this combined Response in Opposition to the Motion to Dismiss Amended Complaint filed by Defendants Qingdao Haiyan Real Estate Group Co., Ltd. ("Haiyan"), Qingdao Druout Wood Industry Co., Ltd. ("Druout"), and Alno Industry SDN BHD ("Alno") (collectively, "the Chinese Defendants"), and the Motion to Dismiss Amended Complaint filed by Defendant Scioto Valley Woodworking, Inc., d/b/a Valleywood Cabinetry ("Valleywood"). *See* DE# 47, 57. All four defendants are referred to as "Defendants" or the "Haiyan Enterprise."

Both Motions should be denied for the following reasons: (1) Cabinets To Go has set forth factual material sufficient to establish specific personal jurisdiction over the Chinese Defendants; (2) Cabinets to Go has set forth factual material sufficient to establish specific personal jurisdiction over Valleywood by virtue of its alter ego relationship with the Chinese Defendants; (3) Cabinets To Go has pleaded factual material sufficient to state claims against the Chinese Defendants and

1

Valleywood; and (4) venue is proper before this Court because a substantial part of the events or omissions giving rise to Cabinets To Go's claims occurred in this judicial district. Alternatively, if the Court believes that there is insufficient information to adjudicate these issues, Cabinets To Go respectfully requests that it either deny the Motions to Dismiss without prejudice or defer ruling on them, so that Cabinets To Go may engage in jurisdictional discovery.

## I.  Factual Background

Cabinets To Go is the leading retailer of kitchen and bath cabinets, countertops, flooring, closets, and related accessories in the United States. *See* Doc. #26, First Amended Complaint ("FAC") p. 5, ¶ 21. It sources products from various suppliers worldwide. *Id.* at p. 5, ¶ 22. Each supplier is responsible for producing specific styles and colors of product in amounts sufficient to fulfill Cabinets To Go's purchase orders. *Id.* Cabinets To Go also requires all suppliers to certify the place of manufacture of the products so it can comply with United States customs laws and pay any applicable tariffs, antidumping duties ("AD"), and countervailing duties ("CVD"). *Id. Id.* at p. 4, ¶ 16. These sums vary, depending on the country of origin for the imported products. *Id.* For instance, there is no tariff, AD, or CVD assessed on cabinets or cabinet parts manufactured in Malaysia, but Chinese-manufactured goods are subject to AD and CVD, which can be in excess of 200%, depending on the individual supplier. *Id.* at p. 4, ¶ 17.

This case centers around a material breach of the Defendants' obligation to identify the country of origin of cabinets and cabinet parts to Cabinets To Go.  The Haiyan Enterprise operates as a one-family business headed by Liyan Jiao ("Liyan"), who lives in China. *See* Declaration of Jason Delves ("Jason Decl."), p. 2, ¶ 5, attached as **Exhibit 1;** FAC, p. 3, ¶ 10.  Each of these separate divisions of the Haiyan Enterprise are operated as one entity where the representatives located in China exercise complete control over all of the other entities and act as an agent and/or

2

instrumentality of the others. *See* FAC, p. 3, ¶ 10. Throughout the course of the relationship between Cabinets To Go and the Haiyan Enterprise, Liyan, Sabrina Lee ("Sabrina"), Vivian Zheng ("Vivian"), Amanda Li ("Amanda"), Weiwei Wang ("Weiwei"), and Philip Jian Jiao ("Philip") have all acted as representatives of the entire enterprise. Jason Decl., p. 2, ¶¶ 5-8; FAC, p. 8, ¶ 43.

Cabinets To Go began doing business with the Haiyan Enterprise in 2011, and had a history of purchasing products that were manufactured in China. Jason Decl., p. 2, ¶ 9. However, in 2019, Cabinets To Go changed its business plan. Cabinets To Go stopped purchasing products manufactured in China or made with Chinese-manufactured parts to avoid paying the tariffs, AD, and CVD that had been imposed on Chinese-made products. Jason Decl., p. 2, ¶ 10; FAC, p. 10, ¶ 56. Cabinets To Go clearly and repeatedly communicated to representatives of the Haiyan Enterprise, orally and in writing, that the products it ordered, as well as the component parts used to complete the products, had to be manufactured somewhere other than China. Jason Decl., p. 3, ¶ 11; FAC, p. 10, ¶ 56. In fact, Jason himself communicated this change to Sabrina and Vivian. Jason Decl., p. 3, ¶ 11. Despite delivering this clear message, the Haiyan Enterprise continued manufacturing products in China. *Id.*, p. 3, ¶ 13. As a result, Cabinets To Go stopped ordering from the Haiyan Enterprise as of October 2019, other than one small purchase order in October 2019 for $780. *Id.* There were no purchase orders placed in November 2019, December 2019, or January 2020. *Id.*, p. 3, ¶ 14.

In late 2019, Liyan, Philip, Sabrina, and Vivian traveled to Lawrenceburg, Tennessee to persuade Cabinets To Go to resume doing business with them. *Id.*, p. 3, ¶ 15. During this visit, Cabinets To Go, through Jason and other executives, again stated that Cabinets To Go would no longer purchase any Chinese-made products. *Id.*, p. 3, ¶ 16. Cabinets To Go made it clear that the material term of any agreement for Cabinets To Go to purchase products from the Haiyan

21995397.v10

Enterprise was that the products could not be manufactured in China. *Id*., p. 3, ¶ 17. During that meeting, Liyan expressed a willingness to find a manufacturing mill outside of China to meet Cabinets To Go's requirements. *Id*., p. 3, ¶ 16.

In January 2020, Liyan again traveled to Tennessee and met with Jason and other Cabinets To Go executives to solicit Cabinets To Go business. *Id*., p. 4, ¶ 19. As part of his sales pitch, Liyan stated that the Haiyan Enterprise now included Alno, a mill in Malaysia, which the Haiyan Enterprise would use to manufacture Cabinets To Go's products and comply with the requirement that products not be manufactured in China. *Id*.

Shortly thereafter, Cabinets To Go hosted its first Managers' Summit in Franklin, Tennessee and, in connection with that event, held a mini-trade show. *Id*., p. 4, ¶ 20. Sabrina and Vivian attended on behalf of the Haiyan Enterprise and paid the $15,000 fee for the privilege of hosting a booth. *Id*. They brought with them products manufactured by the Haiyan Enterprise in an effort to solicit sales from Cabinets To Go and to convince Cabinets To Go to resume doing business with the Haiyan Enterprise. *Id*., p. 4, ¶ 21. As a direct result of Sabrina and Vivian attending the Summit and soliciting sales, Cabinets To Go began purchasing five new lines of product from the Haiyan Enterprise: Springhill Hickory, Annapolis Blue, Hampton Pewter, Worthington White, and Worthington Gray. *Id*., p. 4, ¶ 22. Three of these five lines subsequently became top sellers for Cabinets To Go and, thus, generated millions of dollars in revenue for the Haiyan Enterprise. *Id.*

From February 2020 through July 2021, Cabinets To Go purchased an average of over $950,000 of products per month. *Id*., p. 5, ¶ 24. Indeed, as shown in the chart below, Cabinets To Go provided substantial business to the Haiyan Enterprise on a monthly basis:

4



In July 2021, during a routine quality control inspection at Alno, one of Cabinets To Go's inspectors discovered that the Haiyan Enterprise was shipping products to Cabinets To Go that were actually manufactured in China. FAC, p. 6, ¶ 33. In an attempt to conceal the Chinese origin of the products, the Haiyan Enterprise provided Cabinets To Go with documentation showing that composite wood materials (MDF and plywood sheets) were shipped from China to Malaysia specifically for the purpose of manufacturing cabinets in Malaysia. *Id.* at p. 7, ¶ 34. As a result, Cabinets To Go was euchred into accepting the aforementioned purchase orders for delivery to the carrier. *Id.*

Cabinets To Go investigated the matter and identified thirteen purchase orders with the Haiyan Enterprise that were possibly impacted. FAC, p. 6, ¶ 32. These orders, placed in February and March 2021, represented approximately $793,692.77 worth of products.[1] *Id.* Cabinets To Go subsequently identified additional purchase orders, worth $1,201,136.96, that were supposed to be

---

[1] As noted in the First Amended Complaint, the Haiyan Enterprise typically manufactured its products after receiving an order from Cabinets To Go. *Id.* at p. 6, ¶ 27. The completed product was placed on a container ship and shipped to Savannah, Georgia. From there, it is transported to Huntsville, Alabama by rail, and ultimately delivered to Cabinets to Go's warehouse in Lawrenceburg, Tennessee. *Id.* The entire process historically took between four and eight months. *Id.*

manufactured in Malaysia but were likely manufactured in China. *Id.* at p. 7, ¶ 35. Cabinets To Go asked for certification that these products were manufactured in Malaysia, but the Haiyan Enterprise refused to do so. *Id.* On August 24, 2021, Jason received a call from Sabrina and Amanda, who advised that they could not certify the country of origin because the products and/or component parts of the products, had been manufactured in China. *Id.* at p. 8, ¶ 43; Jason Decl., p. 8, ¶ 40.

Thirteen containers of product ultimately arrived in the United States. FAC, p. 8, ¶ 44. Cabinets To Go attempted to return the containers, but the shipping company refused to take them back. *Id.* Cabinets To Go then searched for a bonded warehouse in which to store the containers, but could not find a suitable location. *Id.* at p. 8, ¶ 45. On September 27, 2021, U.S. Customs and Border Protection ("CBP") informed Cabinets To Go that it must immediately import three of the thirteen containers or they would be seized. *Id.* at p. 8, ¶ 46. Cabinets To Go had no choice but to import those containers and amend its customs declarations, which resulted in Cabinets To Go paying increased tariffs. *Id.* at 9, ¶¶ 47-48.

## II. The Court has personal jurisdiction over all of the Defendants.

### A. *Cabinets To Go's Burden to Establish Personal Jurisdiction is "Slight"*

While the plaintiff bears the burden of establishing the existence of personal jurisdiction, the Court must construe all of the facts in the light most favorable to it. *Wright v. Writers Coffee Shop, LLC*, Case No. 1:17-cv-355, 2018 WL 6729642, at *2 (E.D. Tenn. Dec. 21, 2018). "Where the district court resolves the motion without an evidentiary hearing, . . . the plaintiff's burden is 'relatively slight,' and a *prima facie* showing of jurisdiction will suffice." *Id.* (quoting *Carrier Corp.*, 673 F.3d at 449).

6

**B.      The Court May Exercise Specific Personal Jurisdiction Over the Chinese Defendants.**

**1.      The Chinese Defendants have sufficient minimum contacts with the forum state.**

"The bedrock principles of personal jurisdiction due process analysis is that the nonresident defendant must have sufficient 'minimal contacts' with the forum state such that the maintenance of the suit there does not offend traditional notions of fair play and substantial justice." *Leisure Prods., Inc. v. F-Squared Eng'r Corp.*, 2:13-CV-00115, 2014 WL 11511064, at *3 (E.D. Tenn. March 26, 2014) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts exist when a defendant's conduct and connection with the forum state are such that the defendant 'should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (noting further that quality, not quantity, is key when assessing the defendant's contacts with the forum state)).[2]

Accordingly, "the Sixth Circuit has established a three part test for determining whether a federal court may exercise specific personal jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting or causing a consequence in the forum state; (2) the plaintiff's cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* at *4.

As set forth in the First Amended Complaint, the Chinese Defendants "continuously and systematically conducted business with Cabinets To Go, which they knew to be based in

---

[2] "The court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "The Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause." *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 454 (6th Cir. 1993). In such circumstances, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Pub,* 327 F.3d 472, 477 (6th Cir. 2003).

7

Tennessee." *See* DE #26, p. 3, ¶ 13. Their business activities included "communicat[ing] with Cabinets To Go employees in Tennessee," "contract[ing] to supply goods to Cabinets To Go in Tennessee," and "transact[ing] business in Tennessee through the regular shipment of goods to Cabinets To Go in Tennessee." *Id.* The Chinese Defendants also "exercised control over the products they manufactured for Cabinets To Go by shipping those products from Malaysia to Tennessee knowing that the products would be delivered in Tennessee." *Id.* Additionally, they "derived substantial revenue from their Contracts with Cabinets To Go." *Id.*

Federal courts in Tennessee have found that negotiating such contracts and establishing ongoing business relationships within the forum state constitute purposeful availment. *See, e.g., McMahan Jets, LLC v. Roadlink Transp., Inc.*, 926 F. Supp. 2d 999, 1004 (W.D. Tenn. 2013) (concluding that the defendant "engaged in deliberate and substantial activities in Tennessee" when it "negotiated a contract for the sale of the Aircraft for a significant sum of money and accepted as a condition of that contract delivery of the Aircraft to Tennessee"); *BCM High Income Fund, LP v. Newtek Small Business Finance, Inc.*, No. 2:17-cv-02815-SHL-cgc, 2018 WL 6438569, at *4-5 (W.D. Tenn. June 19, 2018 (explaining that business relationships "intended to be ongoing in nature" may be sufficient to establish purposeful availment); *CapitalPlus Equity, LLC v. Tutor Perini Bldg. Corp.*, No. 3:17-cv-00051, 2017 WL 5586663, at *4 (E.D. Tenn. Nov. 20, 2017) ("When a nonresident defendant transacts business by negotiating and executing a contract via telephone and letters to a Tennessee resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in the forum.").  The Chinese Defendants enjoyed a long-term business relationship with Cabinets To Go, which required regular communications and transactions with Cabinets To Go in Tennessee and resulted in the shipment

8

of the Chinese Defendants' products to Tennessee. As the above-cited case law makes clear, such activities are sufficient to satisfy the first prong of the 'minimum contacts' analysis.

The second factor is easily satisfied. Cabinets To Go seeks redress for the Chinese Defendants' breach of the contracts that governed their ongoing business relationship. Stated another way, the dispute simply would not exist without the contracts that the Chinese Defendants negotiated with Cabinets To Go representatives in Tennessee. Thus, Cabinets To Go's claims arise out of the Chinese Defendants' activities in Tennessee. *See McMahan Jets*, 926 F. Supp. 2d at 1004 (concluding that the plaintiff's claims for breach of contract, breach of warranty, and misrepresentation arose from the defendant's contracts and business relationship with the plaintiff).

As for the third factor, "[a]n inference arises that the third factor is satisfied if the first two requirements are met." *Leisure Prods.*, 2014 WL 11511064, at *5 (explaining further that the Court must consider factors "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies") (internal quotations omitted). Here, Tennessee has a strong interest in protecting its business community from foreign entities that refuse to play by the rules and choose instead to engage in deceptive and damaging trade practices. Cabinets To Go has a similarly strong interest in seeking redress for the significant financial harms caused by the Chinese Defendants' conduct. The Chinese Defendants have not indicated that litigating in this forum would be unduly burdensome for them, nor have they demonstrated that China or Malaysia would have an interest in the resolution of this dispute. For these reasons, Cabinets To Go has sufficiently established that the Court has specific personal jurisdiction over the Chinese Defendants.

2. **Even if the allegations set forth in the First Amended Complaint do not establish specific personal jurisdiction over the Chinese Defendants, additional evidence establishes the existence of sufficient minimum contacts.**

In support of their Motion to Dismiss, the Chinese Defendants submitted declarations from three of their employees. All three declarants insist that the Chinese Defendants do not conduct any business in the United States or solicit any sales in the United States. This is patently false.

As explained above, the Chinese Defendants specifically traveled to Tennessee on multiple occasions in 2019 and 2020 to conduct business with Cabinets To Go executives and manage the parties' relationship. *See* Jason Decl., p. 3-4, ¶¶ 15-22. The Chinese Defendants also paid $15,000 for the privilege of participating in Cabinets To Go's mini trade-show in 2020 and showcasing their products, all in an effort to boost sales that had flagged after Cabinet To Go's withdrawal from China. *Id.* As a result of these specific and targeted contacts with Cabinets To Go in Lawrenceburg, Tennessee, Cabinets to Go placed orders for products from the Haiyan Enterprise worth millions of dollars. *Id.* This is the textbook definition of 'minimum contacts.'

The Chinese Defendants' attempt to minimize their control over the shipments bound for Tennessee is similarly disingenuous. *See* Doc. #58, p. 6. Since 2020, Cabinets To Go and the Haiyan Enterprise had a specific shipping arrangement in place. *Id.*, p. 8, ¶ 41. Cabinets To Go selected a freight forwarder, which was responsible for finding the containers and the ship. *Id.* Once the containers were located, the Haiyan Enterprise retrieved the containers, loaded them, and delivered them to the ship. *Id.* Then, the containers were trucked to the port of Penang, where they were loaded on the ship. *Id.* At that point, the containers were covered by Cabinets To Go's insurance, but the Haiyan Enterprise retains control over the containers until the bill of lading is released. *Id.* That release had to come from the Haiyan Enterprise and generally did not occur until Cabinets To Go paid for the product. *Id.* This typically occurred after the containers were on the

10

water. Until then, the Haiyan Enterprise maintained control of the containers. *Id*. In reality, title transfers when Cabinets To Go takes possession of the containers at the port, rather than the facility. *Id*. Thus, the Chinese Defendants played an active role in controlling the shipment of the containers to their ultimate destination in Lawrenceburg, Tennessee.

The actions by the Chinese Defendants (and the entire Haiyan Enterprise) were deliberate, substantial, and continuing, such that the Chinese Defendants could not have acted without intending to cause a consequence in the forum state. This is sufficient to satisfy the first prong of the 'minimum contacts' test. The second and third prongs are also met, for the reasons set forth in the preceding section. Thus, this Court may exercise specific personal jurisdiction over the Chinese Defendants.

**C.** **The Court May Exercise Personal Jurisdiction Over Valleywood**

Once jurisdiction over the Chinese Defendants has been established, the Court may then consider jurisdiction over Valleywood. As discussed above, Valleywood is part of the Haiyan Enterprise and is merely an agent and/or instrumentality of the Haiyan Enterprise. It is simply indistinguishable from any other part of the family business.

**1.** **Valleywood is the agent and/or alter ego of the Chinese Defendants.**

As discussed above, the owners and agents of the Haiyan Enterprise made no distinction among the various arms of the family business. *See* Jason Decl., p. 8, ¶¶ 43-44. To the extent Valleywood has any separate existence, jurisdiction is appropriate under the alter-ego theory. It "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450–51 (6th Cir. 2012) (quoting *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545

11

F.3d 357, 362 (6th Cir. 2008)); *Third Nat'l Bank,* 882 F.2d at 1090 (finding personal jurisdiction over a parent company that, among other things, was a 100% owner of the subsidiary and had directors serving on the subsidiary's board).

The Sixth Circuit and Tennessee have both adopted the alter ego theory, but utilize different tests in evaluating whether such a relationship exists. *Compare id. with Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009). Because Cabinets To Go's Complaint asserts federal and state law claims, both tests are applicable to the instant matter.[3] Moreover, under either test, this Court has personal jurisdiction over Valleywood by virtue of its alter ego relationship with the Chinese Defendants, as further explained below.

### a. The Sixth Circuit test supports a finding that Valleywood is the alter ego of the Foreign Defendants

While "Sixth Circuit precedent is not entirely clear regarding how to apply the alter-ego theory of personal jurisdiction to federal claims," it "appears to consider several facts when determining if a subsidiary is merely an alter-ego of the parent company, including whether the following circumstances exist: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns, and financial statements; and (7) exerting control over the daily affairs of another corporation." *TailGate Beer, LLC v. Boulevard Brewing Co*., No. 3:18-cv-00563, 2019 WL 2366948, at *6 (M.D. Tenn. June 5, 2019).

---

[3] Courts typically apply the Sixth Circuit's test to federal common law claims and Tennessee's test to state law claims. *See Ramsbottom v. Ashton,* Case No. 3:21-cv-00272, 2022 WL 106733, at *18 (M.D. Tenn. Jan. 11, 2022) ("Federal common law applies when a court assesses alter-ego liability under a federal statutory scheme."); *Sanders v. Allenbrooke Nursing and Rehab. Ctr., LLC*, No. 2:20-cv-02001, 2020 WL 5651675, at *8 (W.D. Tenn. Sept. 22, 2020) ("When analyzing whether the alter-ego theory of personal jurisdiction is satisfied in diversity actions, the Court looks to the forum state's substantive law.").

While Valleywood may claim that it is independent,[4] the facts alleged in the First Amended Complaint and the supplemental information provided in the Jason Declaration tell an entirely different story.[5] FAC, p. 3, ¶ 9; Jason Decl., p. 8, ¶¶ 43-44. Valleywood is not even in charge of its own destiny. Cabinets To Go alleges that the Haiyan Enterprise offered to sell Valleywood and characterized Valleywood as a "division" of Haiyan. FAC, p. 3, ¶ 9. This is nothing less than exerting total control over Valleywood's daily affairs and operations. *Id.* Moreover, when Cabinets to Go considered purchasing Valleywood from the Haiyan Enterprise, Sabrina, Philip, Liyan, and Weiwei acted on behalf of Valleywood related to all of these negotiations. Jason Decl., p. 6, ¶¶ 29-32. Valleywood's CEO was not even part of the discussions and appeared to have no control over the sale of his division. *Id.*, p. 6, ¶ 30.

In December 2020, Jason communicated directly with Sabrina and Philip related to the potential sale of Valleywood. *Id.*, p. 6, ¶¶ 29-31. He had several e-mail exchanges with Philip regarding a letter of intent and confidentiality agreement related to the potential transaction. *Id.,* p. 6, ¶ 31. Discussions resumed in Spring 2021. *Id.*, p. 6, ¶ 32. Jason had a call with Liyan, Sabrina, and Weiwei, during which they discussed Valleywood, and also raised the possibility of Cabinets to Go purchasing Alno, the mill in Malaysia. *Id.* On May 17, 2021, Jason then submitted a letter

---

[4] Notably, the declaration of Valleywood's CEO, Jerome Burdock, focuses solely on Valleywood's lack of corporate presence and limited sales in Tennessee. He does not discuss Valleywood's corporate structure or links to the Chinese Defendants.

[5] As the Court is well aware, "[p]ersonal jurisdiction can take one of two forms: general or specific." Wright, 2018 WL 6729642, at *3. "General jurisdiction is found where contacts are so continuous and systematic as to render a foreign defendant essentially at home in the forum state.'" *Id.* (quoting *Goodyear Dunlop Tires Op., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction, on the other hand, 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).Valleywood argues that general and specific personal jurisdiction does not lie against it because it does relatively little business in Tennessee and was not involved in the transactions at issue in this case. *See* Doc. #48, p. 6-8. Cabinets To Go has never suggested otherwise. It maintains that the Court may exercise both general and specific personal jurisdiction lies against Valleywood by virtue of its alter ego relationship with Haiyan. *See TailGate Beer*, 2019 WL 2366948, at *3 (applying the alter ego theory to its analysis of both general and specific jurisdiction). Thus, it is unnecessary to respond to Valleywood's argument concerning its own activities in Tennessee and interactions with Cabinets To Go.

of interest on behalf of Cabinets to Go and a non-disclosure statement regarding Valleywood and Alno to Sabrina and Liyan and sent these documents to Sabrina using her Haiyan email address. *Id*., p. 7, ¶ 34. Over the next several weeks, Jason and Sabrina exchanged emails regarding due diligence and Cabinets To Go's plans for Valleywood and Alno if the transaction closed. *Id*., p. 7, ¶¶ 34-36.

Publicly available sources corroborate the close ties between the Chinese Defendants and Valleywood. *See* **Exhibit 2**, Laren Declaration. Philip appears to have been materially involved in Valleywood's affairs. According to his resume, available on LinkedIn, Philip served as General Manager for Valleywood, which he characterizes as "the North American branch of my family's business." *See* **Exhibit 3**, Jiao Resume. He "[e]stablished business structures including ERP systems, logistics systems, company policies, and sales materials," and "[c]reated and updated export and import documents including tariff classifications, customs audits, CARB2, and other compliance licenses." *Id.* Philip also submitted an application on behalf of Valleywood to the U.S. Patent and Trademark Office in December 2020. *See* **Exhibit 4**, U.S. Patent and Trademark Office Application. He signed the application as 'Jian Jiao' and identified himself as the "Director" of Valleywood. *Id*. His '@haiyanwoodworking.com' email address is listed as secondary contact information on the application. *Id.* Available customs records indicate that 100% of Valleywood's shipments from the past three years came from the Chinese Defendants. *See* **Exhibit 5**, Panjiva Customs Data.

Considering the totality of the factual allegations, Valleywood is nothing but a "conduit" or "instrumentality" of the Chinese Defendants, such that "the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Hardaway*, 2020 WL 4106440, at *8; *Carrier Corp.*, 673 F.3d at 450–51. Such a relationship is certainly sufficient to support the

exercise of specific personal jurisdiction over Valleywood using an alter ego theory. Consequently, Valleywood's motion to dismiss for lack of personal jurisdiction must be denied.

### b. The Tennessee alter ego test supports a finding that Valleywood is the alter ego of the Foreign Defendants

Under Tennessee law, a Court has personal jurisdiction over an entity defendant under the alter-ego theory if a plaintiff demonstrates: "(1) that the subsidiary corporation is a sham or dummy[;] (2) that the two corporations are, in fact, identical and indistinguishable[;] or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation[.]" *Hardaway v. Quince Nursing and Rehab. Ctr., LLC*, 2:19-CV-2464, 2020 WL 4106440, at *8 (W.D. Tenn. July 20, 2020), *reconsideration denied*, 2:19-CV-2464, 2020 WL 4507327 (W.D. Tenn. Aug. 5, 2020) (quoting *Gordon*, 300 S.W.3d at 653 (citations omitted)). The **key inquiry** is whether "the parent corporation 'exercises complete dominion over its subsidiary ... so that the corporate entity ... had no separate mind, will or existence of its own.' " *Id.* (citing *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979)) (emphasis added); *see also* Restatement (Second) of Conflict of Laws § 52 (1971) ("Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.").

Again, applying the same facts as discussed above, the Haiyan Enterprise exerted complete dominion over Valleywood, such that it had no separate existence of its own. Valleywood is wholly owned by the Haiyan Enterprise and operates as distributor of its products in the United States. *See* Doc. #26, p. 2, ¶ 8. The entities share managers and assets, and the Haiyan Enterprise maintains the ability to sell or otherwise dispose of Valleywood. *Id.* at p. 3, ¶ 9. It is no stretch to conclude

that Valleywood functions as a mere conduit for the Haiyan Enterprise to push its product in the United States. Thus, the Tennessee alter ego test is also satisfied.

### III. If the Court Finds That Cabinets to Go Has Not Yet Established the Existence of Personal Jurisdiction Over the Chinese Defendants and/or Valleywood, Limited Jurisdictional Discovery is Warranted

"A court deciding a motion to dismiss for lack of personal jurisdiction may rule on the motion on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing on the merits of the motion." *Dean v. Motel 6 Op. LP*, 134 F.3d 1269, 1272 (6th Cir. 1998). "If jurisdiction hinges on facts not readily available to the plaintiff, 'courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.'" *Branson v. Alliance Coal*, No. 4:19-cv-155-JMH, 2021 WL 1031002, at *1 (E.D. Ky. Mar. 17, 2021) (quoting *Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *see also Brewer v. Alliance Coal*, Civ. A. No. 20-41-DLB-EBA, 2021 WL 3057380, at *4 (E.D. Ky. July 20, 2021) (allowing limited jurisdictional discovery into the relationship between the defendants because Plaintiff presented some evidence of shared management between the entities).

If the Court is not yet convinced that it may exercise personal jurisdiction over the Chinese Defendants and/or Valleywood, Cabinets To Go respectfully requests limited jurisdictional discovery to explore these issues further. As discussed in the foregoing sections, there is ample evidence to suggest that the Chinese Defendants conduct far more activities in the forum state than they are willing to admit. It is also apparent that the Chinese Defendants and Valleywood are attempting to downplay the significance of their connection. Any additional information needed to complete the minimum contacts and alter ego analyses, such as corporate structure outlines, financial data, contract information, complete customs and shipping records, and the like are not

accessible to Cabinets To Go without assistance from the Court. This is precisely the sort of situation that warrants limited jurisdictional discovery. *Brewer*, 2021 WL 3057380, at *4.

## IV. The Amended Complaint Includes Factual Material Sufficient To State Claims Upon Which Relief May Be Granted

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement should include "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009). Cabinets To Go has met its burden.

### A. Cabinets To Go has included enough factual material relating to Valleywood and its alter ego relationship with the Chinese Defendants to state plausible claims for relief

Cabinets To Go's claims against Valleywood arise from Valleywood's alter ego relationship with the Chinese Defendants. All of the Defendants, including Valleywood, are part of the same scheme to deceive Cabinets To Go, which resulted in the breaches of contract underlying this action. As stated in the foregoing sections, the First Amended Complaint alleges that Valleywood is a wholly owned sales and distribution division of the Haiyan Enterprise and that the Haiyan Enterprise offered to sell Valleywood to Cabinets To Go in early 2021. *See* Doc. #26, p. 2-3, ¶¶ 8-9. This level of control certainly supports an inference that Valleywood is an alter ego of the Chinese Defendants. The First Amended Complaint includes considerable detail about the Defendants' transgressions, and Valleywood does not suggest that these allegations are insufficient to state a claim against the Chinese Defendants. Because Cabinets To Go has included sufficient factual material to support an inference of wrongdoing against the Chinese Defendants and because Cabinets To Go has also established the existence of an alter ego relationship between

Valleywood and the Chinese Defendants, Cabinets To Go has stated a plausible claim for relief against Valleywood.

**B.** ***Cabinets To Go has stated a claim for violations of the Tennessee Consumer Protection Act***

The Tennessee Consumer Protection Act (TCPA) "protect[s] consumers from '[u]nfair or deceptive practices affecting the conduct of any trade or commerce." *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 655-56 (E.D. Tenn. 2011) (quoting T.C.A. 47-18-104(a)). A plaintiff may recover under the TCPA if it can prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated." *Id.* The TCPA is "explicitly remedial, and Tennessee courts are therefore required to construe it liberally to protect consumers in Tennessee and elsewhere." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. 2005).

Cabinets To Go has specifically alleged that the Chinese Defendants violated T.C.A. 47-18-104(b)(7), which prohibits "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." The Chinese Defendants insist that the underlying facts do not fit 47-18-104(b)(7) because "the Chinese Defendants have not identified a case where this provision has been applied to goods based solely on country of origin." See DE #58, p. 8. Notably, however, the Chinese Defendants cannot point to any case law stating that representations relating to a product's country of origin lies outside the scope of 47-18-104(b)(7). Construing Cabinets To Go's allegations in its favor, and taking into account the remedial purpose of the TCPA, Cabinets To Go has stated a plausible claim for relief.

## V.  Valleywood Has Not Established Its Need For A More Definite Statement.

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *See also Lindsey v. Collier*, No. 2:20-cv-000062, 2021 WL 3666906, at \*11 (M.D. Tenn. Aug. 18, 2021) (explaining that a motion for more definite statement "is designed to strike at unintelligibility rather than simple want of detail" and "must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail"). Such relief is unnecessary when a plaintiff has stated a claim sufficient to survive a motion to dismiss. *Id.* (declining to order a more definite statement "for the same reasons the Court will not dismiss this case under Rule 12(b)(6)").

Much like the defendants in *Lindsey*, Valleywood's request for a more definite statement is based on the same arguments made in connection with its motion to dismiss for failure to state a claim. Because that motion is without merit, for the reasons set forth in the preceding section, there is simply no basis for the Court to conclude that Cabinets To Go's First Amended Complaint is vague enough to warrant a more definite statement. *See Lindsey*, 2021 WL 3666906, at \*11 (observing further that federal courts "generally disfavor motions for more definite statements"). This aspect of Valleywood's motion must also be denied.

## VI.  Venue Is Proper In The Middle District Of Tennessee.

"A civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought, as provided in this section, any judicial district in which any defendant is

19

subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3).

Rule 12(b)(3) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a lawsuit for improper venue; *see also* 28 U.S.C. § 1406 (permitting the Court to dismiss or transfer a case laying venue in the wrong division or district). While the plaintiff bears the burden of proving that venue is proper, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Marion v. Conley*, No. 3:06-CV-268, 2006 WL 4608613, at *1 (E.D. Tenn. Oct. 4, 2006) (internal citations and alterations omitted).

Because the Chinese Defendants regularly conducted business activities with Cabinets To Go in Tennessee, and because Cabinets To Go has sufficiently pleaded the existence of an alter ego relationship between the Chinese Defendants and Valleywood, they cannot seriously dispute that a substantial part of the acts or omissions giving rise to these claims occurred in Tennessee. Contrary to the Defendants' suggestion, the fact that other activities relevant to the claims occurred in foreign countries does not undo this conclusion. The rule itself only requires that a *substantial* part of the acts or omissions giving rise to the claim occur the judicial district. However, even if venue does not lie under 28 U.S.C. § 1391(b)(1) or (2), venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over the Defendants, for the reasons set forth above.

## IV.    Conclusion

Accordingly, Defendants' Motions to Dismiss must be denied. In the alternative, Cabinets To Go respectfully requests that the Court deny the Motion without prejudice or defer ruling on it, pending the outcome of limited jurisdictional discovery.

This the 23rd day of February, 2022.

Respectfully submitted,

*V. Brandon McGrath*

V. Brandon McGrath
Dentons Bingham Greenebaum LLP
312 Walnut Street, Suite 2450
Cincinnati, Ohio 45202
Telephone: (513) 455-7641
Email: brandon.mcgrath@dentons.com

Sarah Laren
Dentons Bingham Greenebaum LLP
300 West Vine Street, Suite 1200
Lexington, KY 40507
Telephone: (859) 288-4635
Email: sarah.laren@dentons.com

Charles E. Dorkey, III
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 905-8330
Email: charles.dorkey@dentons.com

H. Buckley Cole (BPR #11811)
PEPPER LAW, PLC
Nashville, Tennessee 37219
Telephone: (615) 256-4838
Fax: (615) 292-9613
Email: bcole@pepperlawplc.com

*Attorneys for Plaintiff, Cabinets to Go*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be electronically served on the following

through the Court's electronic filing service on this the 23rd day of February, 2022.

Richard C. Mangelsdorf, Jr., BPR #012707
Matt Byron, BPR #037514
Mcangus Goudelock & Courie, LLC
Post Office Box 198349
201 4th Avenue N., Suite 1400
Nashville, TN 37219
Phone: (615) 499-7281
chuck.mangelsdorf@mgclaw.com
Matt.byron@mgclaw.com

*Attorneys for Scioto Valley Woodworking, Inc.*
*d/b/a Valleywood Cabinetry*

21

21995397.v10

Samantha A. Lunn, TN BPR No. 030473
Husch Blackwell LLP
736 Georgia Avenue, Suite 300
Chattanooga, TN  37402
Telephone: 423.266.5500
Facsimile: 423.266.5499
E-mail: samantha.lunn@huschblackwell.com

*Attorneys for Defendants Qindao Haiyan Real
Estate Group Co., Ltd., Qingdao Druout Wood
Industry Co. Ltd., and Alno Industry SDN BHD*

*V. Brandon McGrath*