UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CABINETS TO GO, LLC, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) NO. 3:21-cv-00711 |
| QINGDAO HAIYAN REAL ESTATE GROUP CO., LTD, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Cabinets to Go, LLC ("CTG") is suing Qingdao Haiyan Real Estate Group Co., LTD ("Haiyan"), Qingdao Drouot Wood Industry Co., LTD ("Drouot"), Alno Industry SDN BHD ("Alno"), and Scioto Valley Woodworking, Inc. ("Valleywood") for violations of the Tennessee Consumer Protection Act ("TCPA"), among other causes of action. CTG alleges the defendants misrepresented the country of origin of certain goods they sold to CTG. Haiyan, Drouot, and Alno ("HDA"), which are located outside the United States, have moved to dismiss CTG's lawsuit for lack of personal jurisdiction and failure to state a claim. (Doc. No. 57). Valleywood, which is based in the United States, has filed a separate motion to dismiss on similar grounds. (Doc. No. 47). Both motions have been fully briefed. (Doc. Nos. 48, 58, 62, 68, 69). The Court will grant in part and deny in part HDA's motion. It will grant Valleywood's motion outright.

I.     BACKGROUND

CTG sells cabinets and related accessories in the United States. (Doc. No. 26 ¶ 21). Its principal place of business is Tennessee, but CTG obtains materials for its cabinets from suppliers around the world. (Id. ¶¶ 2, 16, 22). Depending on the origin of the material CTG imports, it may have to pay tariffs, antidumping duties ("ADs"), and/or countervailing duties ("CVDs") of varying

sizes. (Id. ¶ 16). Accordingly, CTG requires that its suppliers verify the country of origin of the material they sell to CTG. (Id. ¶ 19).

Haiyan is one of CTG's suppliers. (Id. ¶ 23). It is a Chinese company. (Id. ¶ 3). It owns and operates Drouot, which is also in China; Alno, which is in Malaysia; and Valleywood, which is in Ohio. (Id. ¶¶ 4, 6, 8).

CTG originally started doing business with Haiyan in 2011. (Doc. No. 62-1 ¶ 9). At that time, CTG accepted products manufactured in China. (Id.). However, CTG changed its business plan in 2019 and stopped accepting such products. (Id. ¶ 10). As a result, CTG stopped ordering materials from Haiyan. (Id. ¶ 13).

In response, in late 2019, representatives of Haiyan travelled to Tennessee. (Id. ¶ 15). They met with CTG and attempted to persuade it to resume its business relationship with Haiyan. (Id.). The representatives informed CTG they were willing to find a manufacturing mill outside China to fulfill CTG's requirements. (Id. ¶ 16). CTG was open to restarting its relationship with Haiyan on that condition. (Id.).

Later, in January 2020, a Haiyan representative made another trip to Tennessee to meet with CTG executives. (Id. ¶ 19). Haiyan informed CTG it had obtained a mill in Malaysia (Alno) that it could use to manufacture products for CTG. (Id.).

Shortly thereafter, Haiyan representatives traveled to Tennessee for a third time. (Id. ¶ 20). They attended a CTG trade show, where they hosted a booth. (Id.). They also solicited sales from CTG and, as a result, CTG began purchasing five new lines of products from Haiyan, based on the parties' agreement that the products would be manufactured in Malaysia. (Id. ¶¶ 21–22; Doc. No. 26 ¶ 25). Between February 2020 and July 2021, CTG purchased an average of $950,000 worth of products from Haiyan per month. (Doc. No. 62-1 ¶ 24).

2

Near the end of July 2021, CTG began to suspect Haiyan was shipping products to it that were manufactured in China, as opposed to Malaysia. (Doc. No. 26 ¶ 33). In August 2021, representatives of Haiyan admitted, during a phone call with CTG, that certain products in transit to CTG had been manufactured in China. (Doc. No. 62-1 ¶ 43). Over the next few weeks, thirteen containers of products manufactured in China arrived in the United States. (Id. ¶ 44). CTG tried to return the containers, but the shipping company would not take them back. (Id. ¶ 45).

Ultimately, U.S. Customs and Border Protection ("CBP") informed CTG that it had to immediately import three of the thirteen containers or CBP would seize them. (Id. ¶ 46). CTG reluctantly imported all thirteen containers, paying $650,000 more for them in tariffs than it would have paid if the materials had originated in Malaysia. (Id. ¶¶ 47–48).

CTG sued in this Court on September 14, 2021 (Doc. No. 1) and filed an Amended Complaint on November 3, 2021 (Doc. No. 26). It invoked the Court's diversity jurisdiction. (Id. ¶ 12).

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must meet Rule 8(a)(2)'s pleading standard. See Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). Rule 8(a)(2) requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Taken together, the "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim

3

plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft 556 U.S. at 678). In reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016).

There are separate principles the Court must consider in evaluating a motion to dismiss for lack of personal jurisdiction. The "party asserting personal jurisdiction bears the burden of establishing that such jurisdiction exists." Kerns v. Caterpillar, Inc., 583 F. Supp. 2d 885, 891 (M.D. Tenn. 2008). However, the party "need only present a *prima facie* case for jurisdiction."[1] Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997). The party can meet this burden by establishing "with reasonable particularity sufficient 'minimum contacts' with [the forum state] so that the exercise of jurisdiction over [the defendant] would not offend 'traditional notions of fair play and substantial justice.'" Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). In determining whether a plaintiff established such contacts, courts may look to the "plaintiff's complaint and affidavits." Kerry, 106 F.3d at 149. They must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Neogen, 282 F.3d at 887. However, they need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." Kerry, 106 F.3d at 153.

---

[1] This applies where, as here, the Court resolves the motion to dismiss based on the record alone, without an evidentiary hearing or additional discovery. Kerns, 583 F. Supp. 2d at 891.

4

## III. ANALYSIS

The Court has personal jurisdiction over Haiyan and CTG has stated a TCPA claim against it. However, the Court does not have personal jurisdiction over Valleywood, Drouot, or Alno. Accordingly, the Court will permit CTG's claims against Haiyan to proceed and will dismiss the claims against Valleywood, Drouot, and Alno.

### A. CTG's Claims Against Haiyan Survive Dismissal.

#### 1. *The Court Has Personal Jurisdiction Over Haiyan.*

The Court may exercise personal jurisdiction over Haiyan. "Personal jurisdiction may be found either generally or specifically." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." Id. at 679. Tennessee's long-arm statute "has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause." Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003) (citation and quotation omitted). Accordingly, CTG need only show that personal jurisdiction over Haiyan comports with federal due process requirements. It has done so.

There is a "three-part test for determining whether, consistent with due process, a court may exercise specific personal jurisdiction." Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003). First, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." (Id.). Second, "the cause of action must arise from the defendant's activities there." (Id.). Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." (Id.). Courts sometimes refer to this final element as the "fairness" requirement. First Nat. Bank of Louisville v. J. W. Brewer Tire

Co., 680 F.2d 1123, 1126 (6th Cir. 1982). Each of the requirements for the Court to exercise specific personal jurisdiction over Haiyan are present in this case.

To start, Haiyan purposefully availed itself of the privilege of conducting business activities in Tennessee. A defendant purposefully avails itself of a forum state where it "engag[es] in activity that should provide 'fair warning' that [it] may have to defend a lawsuit there." Youn, 324 F.3d at 418. Haiyan's representatives traveled to Tennessee on three separate occasions to solicit business from CTG.[2] (Doc. No. 26 ¶¶ 15–20). Indeed, Haiyan has done extensive business with CTG as a result of those solicitations. (Id. ¶¶ 21–25). As noted, Haiyan sold CTG $950,000 worth of products per month between February 2020 and July 2021. (Id. ¶ 24). In similar situations, courts have found defendants purposefully availed themselves of a forum state. E.g., ACH Food Companies, Inc. v. Wiscon Corp., No. 04-2589 M1/V, 2005 WL 2114056, at *9 (W.D. Tenn. Aug. 30, 2005) ("Here, it is undisputed that Defendant does business with seven customers who are located in the State of Tennessee, with total sales to those customers amounting to over $100,000 in 2004. . . . It is likewise undisputed that Defendant has actively solicited business in Tennessee. Accordingly, Defendant has purposely availed itself of the privilege of doing business in Tennessee."). The Court finds Haiyan purposefully availed itself of the privilege of conducting business activities in Tennessee.

Further, CTG's TCPA cause of action arose from Haiyan's activities in Tennessee. "The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." Youn, 324 F.3d at 419. That is the case here. CTG's claims stem from its commercial agreements with Haiyan, which were formed based

---

[2] Haiyan avers that one of these trips was actually to Massachusetts, as opposed to Tennessee. (Doc. No. 69 at 3). However, because this claim conflicts with CTG's allegations, the Court will ignore it for the purposes of this Memorandum Opinion and Order. See Neogen, 282 F.3d at 887.

6

Case 3:21-cv-00711   Document 71   Filed 06/06/22   Page 6 of 13 PageID #: 363

on Haiyan's travels to Tennessee to solicit CTG's business. (Doc. No. 26 ¶¶ 21–22). Plus, this lawsuit concerns Haiyan's sale and transmission of products to Tennessee. (Id. ¶ 24). Therefore, CTG's suit is related to Haiyan's forum contacts. E.g., ACH Food Companies, 2005 WL 2114056, at *10 (cause of action arose from defendant's Tennessee activities where it "relate[d] to Defendant's sale of items . . . to customers in Tennessee").

Finally, Haiyan's acts and their consequences have a substantial enough connection to Tennessee that it is fair and reasonable for the Court to exercise jurisdiction over Haiyan. Because the Court has already found the first two elements of specific personal jurisdiction are present, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." J. W. Brewer Tire Co., 680 F.2d at 1126. To determine whether fairness exists, the Court must consider several factors, including "the burden on the defendant," "the interest of the forum state," "the plaintiff's interest in obtaining relief," and "other states' interest in securing the most efficient resolution of the controversy." Intera Corp. v. Henderson, 428 F.3d 605, 618 (6th Cir. 2005).

On balance, these factors weigh in favor of the Court exercising jurisdiction. CTG has a strong economic interest in obtaining relief. (See Doc. No. 62-1 ¶ 47–48). Likewise, Tennessee has compelling interests in enforcing contracts its residents enter and in protecting its consumers from deceptive business practices.[3] See Third Nat. Bank in Nashville v. WEDGE Grp. Inc., 882 F.2d 1087, 1092 (6th Cir. 1989) ("Tennessee has interests in resolving this case, not the least of

---

[3] Haiyan appears to argue that Malaysia has a stronger interest in this litigation than Tennessee, citing generic considerations such as Malaysia's economic relationship with the United States and history with the World Trade Organization. (Doc. No. 69 at 5–6). Haiyan does not make clear what bearing these considerations should have on this case in particular, nor does it cite any legal authority in this portion of its brief. (Id.). The Court sees no reason why Malaysia's generic interests in international trade should undermine the Court's conclusion that Tennessee has a strong, specific interest in the present litigation.

7

which is to provide a forum for the adjudication of a dispute between a resident and a nonresident that has purposefully availed itself of acting in and causing consequences in Tennessee."); S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 385 (6th Cir. 1968) ("[W]hen [a] contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted."). True, it will be inconvenient for Haiyan to defend a suit in Tennessee. (Doc. No. 69 at 5). "Yet, [courts] have deemed specific jurisdiction to be proper even when a defendant would be compelled to travel." Henderson, 428 F.3d at 618. Haiyan's status as a foreign enterprise, alone, does not make this case "unusual" enough for the Court to find the fairness requirement lacking.

Because the elements of specific personal jurisdiction are satisfied with respect to Haiyan, the Court rejects Haiyan's request for dismissal based on the lack of such jurisdiction.[4]

        *2.     CTG Has Sufficiently Stated a TCPA Claim Against Haiyan.*

The Court also rejects Haiyan's argument that CTG has not stated a claim against it under the TCPA. The TCPA provides "remedies to consumers victimized by unfair or deceptive business acts or practices that were committed in Tennessee in whole or in part." Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). "In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property[.]" Id. (citation and quotation omitted).

---

[4] Haiyan briefly argues that, should the Court fail to dismiss CTG's claims for lack of personal jurisdiction, it should dismiss the claims because the Court is an improper venue. (Doc. No. 58 at 7). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. As the Court has already explained, a substantial part of the events giving rise to CTG's claims occurred in this district. See supra Section III.A.1. Accordingly, this Court is an appropriate venue for this lawsuit.

CTG has alleged both elements. First, CTG has alleged Haiyan engaged in an act declared unlawful by the TCPA. The TCPA makes it unlawful to "[r]epresent[] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Tenn. Code § 47-18-104(b)(7). CTG has alleged that Haiyan "manufactured cabinets and cabinet parts in China and then attempted to pass them off as manufactured in Malaysia." (Doc. No. 26 ¶ 20). This misrepresentation concerned the standard, quality, or grade of Haiyan's goods because "there is no tariff, AD, or CVD assessed on cabinets and cabinet parts manufactured in Malaysia," whereas "cabinets and cabinet parts manufactured in China are subject to AD and CVD, which can be in excess of 200%, depending on the individual supplier." (Id. ¶ 17). Second, CTG has alleged Haiyan's conduct caused an ascertainable loss because CTG claims it paid $650,000 more in tariffs than it would have absent Haiyan's misrepresentation. (Id. ¶¶ 47–48).

Haiyan's argument that CTG has not stated a TCPA claim is unavailing. Haiyan contends a misrepresentation regarding a product's country of origin does not concern its standard, quality, or grade because "there is nothing in the statute or case law that brings 'country of origin' into the realm of the TCPA." (Doc. No. 69 at 6). This argument misunderstands the scope of the TCPA. It is meant to cover "*any* act or practice that is unfair or deceptive to consumers." Tucker, 180 S.W.3d at 115 (emphasis added). And courts are "required to construe it liberally." Id. With this in mind, the Court cannot hold that only acts explicitly spelled out in the TCPA are covered by the TCPA's broad protections, as Haiyan suggests. (Doc. No. 69 at 6). The Court finds that misrepresenting a product's country of origin affects its standard, quality, or grade where (as here) country of origin differs from the parties' agreement and representations and impacts the costs consumers will have to bear upon receipt of the product. Accordingly, CTG has stated a TCPA

9

claim against Haiyan.

### B. Valleywood Is Entitled to Dismissal of the Claims Against It.

The Court will dismiss the claims against Valleywood for lack of personal jurisdiction. All of CTG's allegations concerning Valleywood boil down to this: Haiyan has "complete control" over Valleywood. (Doc. No. 26 ¶ 9; see also id. ¶¶ 8, 10; Doc. No. 62-1 ¶¶ 3–4, 27–32). CTG has not alleged Valleywood engaged in anything resembling "continuous and systematic contact with [Tennessee]" as is required to show general personal jurisdiction. Miller, 694 F.3d at 678–79. Nor has CTG alleged Valleywood conducted any activities in Tennessee that gave rise to this lawsuit, as is required to show specific personal jurisdiction. Youn, 324 F.3d at 419. Indeed, CTG has not alleged facts showing Valleywood, specifically, had any involvement in the events leading to this lawsuit *at all*. Accordingly, the Court cannot exercise personal jurisdiction over Valleywood.

CTG's counterarguments miss the point. CTG contends the Court has jurisdiction over Valleywood because (1) it has jurisdiction over Haiyan and (2) Valleywood is "an agent and/or instrumentality" of Haiyan. (Doc. No. 62 at 11). CTG points out that "a non-resident parent corporation is amenable to suit in [a] forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." (Id. (quoting Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 450–51 (6th Cir. 2012)). However, the Court would have to take this principle a step further to exercise jurisdiction over Valleywood. It would have to hold a *subsidiary* controlled by a parent may be hailed into court for actions taken by the *parent* that did not involve the subsidiary at all. Such a holding would conflict with a prior decision by this Court. Shelter Mut. Ins. Co. v. Bissell Homecare, Inc., No. 3:20-CV-00813, 2021 WL 1663585, at *9 (M.D. Tenn. Apr. 28, 2021) (subsidiary was not subject to personal jurisdiction where parent company allegedly manufactured

and sold battery in Tennessee that injured plaintiff where plaintiff did not allege subsidiary was "connected to the relevant battery or the State of Tennessee in any way"). Further, such a holding would run afoul of the basic principles of personal jurisdiction, which require such jurisdiction to stem from entities' contacts with the forum state. Neogen, 282 F.3d at 887. Because CTG has alleged no such contacts by Valleywood, the Court cannot exercise personal jurisdiction over it.

CTG might object that it has alleged more information about Valleywood than the Court gives it credit for. In the Amended Complaint, CTG in fact alleges "[t]he Court has personal jurisdiction over all Defendants because they continuously and systematically conducted business with Cabinets To Go, which they knew to be based in Tennessee." (Doc. No. 26 ¶ 13). But such broad, conclusory allegations are insufficient to establish personal jurisdiction. Campinha-Bacote v. Hudson, 627 F. App'x 508, 510 (6th Cir. 2015) (affirming dismissal of complaint for lack of personal jurisdiction where complaint contained "conclusory jurisdictional allegations"); Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) ("Conclusory allegations are not enough to establish personal jurisdiction") (citation and quotation omitted). Nor do they require the Court to permit further jurisdictional discovery. Shelter Mut. Ins. Co. v. Bissell Homecare, Inc., No. 3:20-CV-00813, 2021 WL 1663585, at *6 (M.D. Tenn. Apr. 28, 2021) (explaining it "is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where, as here, the plaintiff makes only conclusory allegations and fails to offer any factual basis for its allegations") (citation and quotation omitted).[5] The Court will dismiss CTG's

---

[5] The Court is not inclined to exercise its discretion in favor of jurisdictional discovery where, as here, CTG had the opportunity to ask the Magistrate Judge for such discovery at the initial case management conference, yet waited to make its request in a response to a motion to dismiss. Further, CTG has failed to state the specific discovery it would seek, and courts need not permit jurisdictional discovery where "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." Base Metal Trading, Ltd. v. OJSC, 283 F.3d 208, 216 n.3 (4th Cir. 2002).

claims against Valleywood for lack of personal jurisdiction.

C. Drouot Is Entitled to Dismissal of the Claims Against It.

The Court will also dismiss the claims against Drouot for lack of personal jurisdiction. CTG has made only four allegations specific to Drouot[6]: (1) "Haiyan owns and operates [Drouot]" (Doc. No. 26 ¶ 6); (2) Haiyan "has the authority to exert complete control, and does exert such control, over Drouot" (id. ¶ 7); (3) Drouot and the other defendants "are all essentially the same entity" (id. ¶ 10); and (4) CTG "began doing business with . . . Drouot in 2011" (Doc. No. 62-1 ¶ 9). Drouot's status as a subsidiary controlled by Haiyan does not automatically make it subject to the Court's personal jurisdiction. See supra Section III.B. And CTG clearly has not alleged facts showing that Drouot had continuous and systematic contact with Tennessee, or that Drouot conducted any activities in Tennessee that gave rise to this lawsuit. Accordingly, the Court may not exercise personal jurisdiction over Drouot. Miller, 694 F.3d at 678–79; Youn, 324 F.3d at 419.

D. Alno Is Entitled to Dismissal of the Claims Against It.

Finally, the Court will dismiss the claims against Alno for lack of personal jurisdiction. CTG's allegations against Alno resemble its allegations against Drouot. Primarily, CTG avers Alno is a subsidiary controlled by Haiyan. (Doc. No. 26 ¶¶ 4–5, 10). However, CTG makes a few additional, semi-relevant allegations. It claims Haiyan was supposed to use Alno to manufacture products for CTG and that CTG later discovered products coming from Alno had actually been manufactured in China. (Id. ¶¶ 5, 23; Doc. No. 62-1 ¶¶ 19, 37). These allegations hint at a

---

[6] In its pleadings and in its briefs, CTG sometimes makes arguments or allegations concerning "all Defendants" (e.g., Doc. No. 26 ¶¶ 13–14) or all the foreign defendants (e.g., Doc. No. 62 at 8). This is of little help to the Court. Generally, at the dismissal stage, a plaintiff must show "factual matter sufficient to identify which allegations pertain to which defendant (rather than lumping all defendants together without identifying the individual defendant or specifying the combination of defendants to which a particular claim or allegation relates)." City of Pontiac Police & Fire Ret. Sys. v. Jamison, No. 3:20-CV-00874, 2022 WL 884618, at *9 n.12 (M.D. Tenn. Mar. 24, 2022).

12

connection between Alno, Tennessee, and the present litigation. But they are too vague, speculative, and sparse to show personal jurisdiction or require jurisdictional discovery. See Bissell, 2021 WL 1663585, at *6 ("Discovery is not required based on speculation or hope."). Hence, the Court will dismiss the claims against Alno without prejudice. CTG may refile those claims if it can cure the foregoing defects in the allegations it has raised.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows: (1) HDA's Motion to Dismiss (Doc. No. 57) is **GRANTED IN PART AND DENIED IN PART**, (2) Valleywood's Motion to Dismiss (Doc. No. 47) is **GRANTED**, (3) the claims against Valleywood and Drouot are **DISMISSED**, and (4) the claims against Alno are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE