# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CABINETS TO GO, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> QINGDAO HAIYAN REAL ESTATE GROUP CO., LTD, et al. <br><br> Defendants. | Case No. 3:21-cv-00711 <br><br> Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Jeffery S. Frensley |

## DECLARATION OF JASON DELVES

1. I, Jason Delves, have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I am the President and Chief Executive Officer ("CEO") of Cabinets To Go, LLC ("Cabinets To Go."). I have served as President since July 2019. I became President and CEO of Cabinets To Go in July 2020, and continue to serve in both roles today.

3. As President and CEO, I have personal knowledge of and access to information relating to Cabinets To Go's relationships with suppliers, including Defendant, Qingdao Haiyan Real Estate Group Co., LTD ("Haiyan").

4. Cabinets To Go is the leading retailer of kitchen and bath cabinets, countertops, flooring, closets, and related accessories in the United States. It specializes in providing "ready to assemble" products to customers, typically within one to two weeks of the date of order.

5. Because Cabinets to Go is able to fulfill customer orders quickly, it enjoys a substantial competitive advantage over other suppliers of kitchen and bath products.

6. Cabinets To Go stores approximately twenty-two weeks' worth of inventory at its distribution center in Lawrenceburg, Tennessee.

7. Cabinets To Go also relies heavily on its global supply chain. It obtains products from various suppliers around the world, each of which is responsible for timely producing specific styles and colors of products exclusive to Cabinets To Go in amounts sufficient to fill purchase orders.

8. Haiyan had a long-standing business relationship with Cabinets To Go that lasted from 2011 to 2021. Haiyan was once one of Cabinets To Go's main suppliers.

9. Cabinets To Go placed purchase orders for particular lines of product with Haiyan, and Haiyan manufactured the product according to Cabinets To Go's specifications.

10. Once Haiyan manufactured the product, it was placed on a container ship in Malaysia and sent to Savannah, Georgia. After arriving in Savannah, the containers were shipped by rail to Huntsville, Alabama, where they were processed by U.S. Customs and Border Patrol. The containers were then delivered to Cabinets To Go's distribution center in Lawrenceburg, Tennessee. This entire process took between four and eight months.

11. Cabinets to Go emphasized to Haiyan the need to timely provide products ordered by Cabinets to Go so Cabinets to Go would have product to sell and be able to fulfill customer orders.

12. Until Fall 2019, Haiyan manufactured products for Cabinets To Go at its facility in Qingdao City, China.

13. Both Cabinets To Go and Haiyan were tracking changes in American trade policy

with respect to products, including cabinets, manufactured in China. In June 2019, one of Haiyan's representatives, Vivian Zheng ("Zheng") emailed Cabinets To Go's Chief Legal Officer, Jill Witter ("Witter"), to ask if Cabinets To Go could apply for an exemption from the tariffs that took effect in May 2019. A true and correct copy of this email is attached as **Exhibit 1**, Email between V. Zheng and J. Witter re: Application to request to exclude particular products from the Section 301, CTG 001132-001133.

14. Zheng stated, "we just want to do anything if it is possible to reduce the Cabinets To Go's import cost." *Id*.

15. By Fall 2019, Cabinets To Go had decided to change its business plan due to these trade policy developments.

16. Cabinets to Go stopped purchasing products manufactured in China or made with Chinese-manufactured parts to avoid paying tariffs, anti-dumping duties ("AD"), and countervailing duties ("CVD") that had been imposed on Chinese-made products.

17. I informed Zheng and another Haiyan representative, Lei "Sabrina" Lee ("Lee"), of Cabinets To Go's plan.

18. Although Cabinets To Go had purchased over $17 million in products from Haiyan between January and September 2019, it did not appear that Zheng and Lee were taking this change seriously.

19. Because Haiyan continued to manufacture products in China, Cabinets To Go ceased doing business with Haiyan around October 2019.

20. Cabinets To Go did not place any orders with Haiyan in November 2019, December 2019, or January 2020.

21. In late 2019, shortly after Cabinets To Go stopped purchasing from Haiyan, a

delegation of Haiyan representatives traveled to Lawrenceburg, Tennessee.

22. The delegation consisted of Haiyan's Chairman, Liyan Jiao ("Liyan"), his son, Philip Jiao ("Philip"), Zheng, and Lee.

23. They met with me and other Cabinets To Go executives to persuade Cabinets To Go to resume a business relationship with Haiyan.

24. I and other Cabinets To Go executives repeatedly stated that Cabinets To Go would no longer purchase any Chinese products, and that a material term of any agreement for Cabinets To Go to purchase products from Haiyan was that the products could not be manufactured in China.

25. Liyan represented that Haiyan would take steps to manufacture product outside of China, all in an effort to meet Cabinets To Go's requirements.

26. He later indicated Haiyan had acquired a mill in Malaysia, called Alno that Haiyan would use to manufacture Cabinets To Go's products. This was acceptable to Cabinets To Go because there were no tariffs, AD, or CVD on Malaysian-made goods.

27. During this time, Cabinets To Go repeatedly emphasized its unwillingness to purchase Chinese goods.

28. In November 2019, Zheng noted that the cost of sourcing plywood from Vietnam was driving up the product price, and asked whether they could use Chinese plywood instead. A true and accurate copy of this email is attached as **Exhibit 2**, November 2019 Email Thread Between J. Witter and V. Zheng re: Plywood for Malaysian factory, CTG 001173-001176.

29. Zheng specifically acknowledged that Chinese plywood was subject to anti-dumping duties, but wondered whether that rule would still apply if the plywood was processed and used to manufacture goods in Malaysia.

30. Witter expressly rejected this suggestion, unequivocally stating that "[w]e cannot and will not accept plywood from China." Zheng indicated that she understood and that Haiyan would continue sourcing plywood from Vietnam.

31. About one month later, Witter emailed Zheng with a summary of Haiyan's obligations under the new agreement. A true and accurate copy of that email is attached as **Exhibit 3**, December 2019 Email Thread Between J. Witter and V. Zheng re: Haiyan Malaysia, CTG 001464-001466.

32. Witter explicitly stated: "NO PLYWOOD FROM CHINA WILL BE ACCEPTED. Additionally, all major components (the box, doors, drawers) must be manufactured in Malaysia for us to avoid additional tariffs." *Id*.

33. Witter also noted the importance of following the requirements set forth in Cabinets To Go's Supplier Manual. *Id*.

34. Cabinets To Go's Manager of Customs Compliance & Process Development, Kim Surber ("Surber"), sent Zheng the latest version of the Supplier Manual (revised December 2019) shortly thereafter. A true and accurate copy of the Supplier Manual is attached as **Exhibit 4**, CTG 001245-001273. A true and accurate copy of the email communication is attached as **Exhibit 5**, December 2019 Email Thread between V. Zheng and K. Surber re: Supplier Manual, CTG 001244.

35. The Supplier Manual included an "International Shipping" section, which specifically stated that: "Supplier is responsible for fulfilling any customs obligations origin marking or labeling requirements, and certification or local content reporting requirements." **Exhibit 4**, CTG 001262.

36. It also noted that "[a] commercial invoice must be produced for each entry to U.S. Customs, and must meet the following general conditions," which included "country or origin of

merchandise." *Id.*, CTG001263.

37. These requirements were not only necessary for customs purposes, but also to ensure compliance with other laws, including Title VI of the Toxic Substances Control Act ("TSCA Title VI"), the Lacey Act, and California Air Resources Board ("CARB") Phase 2. *Id.*, CTG001258-001260.

38. Because Cabinets To Go repeatedly emphasized the importance of manufacturing goods outside of China, Haiyan knew it was a material term of the contract. Additionally, Haiyan knew it was a material term of the contract because it understood Cabinets To Go would be subject to substantial tariffs if it had to import products manufactured in China. A true and accurate copy of an email is attached as **Exhibit 6**, December 2020 Email Thread between A. Hughes and F. Poggemeyer, CTG 001682-001685.

39. In January 2020, Cabinets To Go held its first Managers' Summit in Franklin, Tennessee, where it gathered all of its store managers together for presentations and training opportunities.

40. The event also incorporated a mini-trade show, where Cabinets To Go's suppliers could display new products.

41. Lee and Zheng attended the mini-trade show and displayed products made by Haiyan.

42. As a result, Cabinets To Go began purchasing seven new lines of product exclusively from Haiyan: Springhill Hickory, Annapolis Blue, Hampton Pewter, Worthington White, Worthington Gray, Palm Beach Dark Chocolate, and Kensington Mist. Three of these lines subsequently became top sellers for Cabinets To Go and generated millions of dollars in revenue for Haiyan.

43. Between February 2020 and July 2021, Cabinets To Go purchased an average of over $950,000 of products of these exclusive Haiyan lines per month.

44. Cabinets To Go would place purchase orders with Haiyan representatives and Haiyan used its mill in Malaysia to manufacture the products ordered by Cabinets To Go.

45. Haiyan then followed the same shipping procedure as described in paragraph 10, above. The product was placed on a container ship in Malaysia and sent to Savannah, Georgia. After arriving in Savannah, the containers were shipped by rail to Huntsville, Alabama, where they were processed by U.S. Customs and Border Patrol. The containers were then delivered to Cabinets To Go's distribution center in Lawrenceburg, Tennessee. This entire process took between four and eight months.

46. As part of its quality control measures, Cabinets To Go utilized inspectors who would visit Alno and spot-check the products that were ready for shipment.

47. In late July 2021, these inspectors discovered evidence that products coming from the Alno mill had actually been manufactured in China, in breach of the agreement between the parties. A true and accurate copy of the July 2021 Benchmark Report is attached as **Exhibit 7**, CTG 000775-000779.

48. The inspectors identified thirteen containers' worth of product at issue, which related to purchase orders placed in February and March of 2021.

49. Witter and I attempted to contact Lee multiple times to discuss the issue and obtain clarification as to the country of origin of the products in these thirteen containers, but received slow and evasive responses. A true and accurate copy of the email is attached as **Exhibit 8**, July 2021 Email Thread Between J. Witter and S. Lee, CTG 001478-001480.

50. Meanwhile, Cabinets To Go identified other purchase orders that may have been affected by Haiyan's deceptive practices, and asked Haiyan to certify the country of origin for those products as well. A true and accurate copy of the August 2021 Benchmark Report is attached as **Exhibit 9**, CTG 000782-000785.

51. In early August 2021, another Haiyan representative, Wei Wei Wang ("Wang"), responded in Lee's stead and stated that the products at issue met Cabinets To Go's standards, but there would be further investigation. A true and accurate copy of the email is attached as **Exhibit 10**, July 2021 Email Thread Between J. Witter and W. Wang, CTG 001070-001072.

52. On August 24, 2021, I received a phone call from Lee and another Haiyan representative, Amanda Li ("Li"), who advised that they could not certify as to the country of origin because the products and/or component parts of the products had been manufactured in China.

53. In September 2021, the thirteen containers discussed above arrived in the United States with products for which Haiyan would not certify country of origin. Cabinets To Go immediately attempted to return the products listed in those thirteen containers (the "Landed POs"), but the shipping company refused to take them back. True and accurate copies of the Landed POs are attached as **Exhibit 11**.

54. Cabinets To Go began searching for a bonded warehouse to store the products listed in the Landed POs, but could not locate one.

55. On September 27, 2021, U.S. Customs and Border Protection ("CBP") notified Cabinets To Go that it must immediately import the Landed POs or CBP would seize them.

56. As a result of that notice, Cabinets To Go amended its customs declaration regarding the country of origin for the Landed POs and imported those products. Because the

Landed POs were then subject to tariffs associated with importing Chinese products, Cabinets To Go had to pay an additional $769,989 in tariffs. The amended customs declarations consist of 347 pages, CTG 002368-002714. These documents are not attached but can be provided, if needed.

57. Cabinets to Go also incurred additional costs related to the Landed POs: $24,000 in additional delivery costs; $32,708 in storage/demurrage costs; $75,000 in legal expenses; and $29,829 for labeling changes. Thus, the total expense to Cabinets to Go related to the Landed POs was $931,526.

58. After Cabinets to Go raised concerns regarding country of origin and reiterated the requirement that Cabinets to Go's products must not be manufactured in China, Haiyan refused to provide additional products to Cabinets to Go.

59. A substantial amount of Cabinets To Go's products were still in transit or ready to ship. Haiyan stopped these products from being delivered (the "Undelivered POs"). A summary of the Undelivered POs is attached as **Exhibit 12**.

60. Of the Undelivered POs, Cabinets to Go had paid $180,439.46 for four of the purchase orders. True and accurate copies of three of those four purchase orders are attached as **Exhibit 13**.

61. All of the products ordered by Cabinets To Go under the Undelivered POs were needed by Cabinets To Go to be able to maintain its supply chain to fulfill orders.

62. As a result, Cabinets To Go was not able to sell the products that were not delivered and suffered substantial lost sales and lost profits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of April, 2023.

*Jason Delves*
Chief Executive Officer
Cabinets to Go, LLC

22783163.v2

Respectfully submitted,

*V. Brandon McGrath*
V. Brandon McGrath
Dentons Bingham Greenebaum LLP
312 Walnut Street, Suite 2450
Cincinnati, Ohio 45202
Telephone: (513) 455-7641
Email: brandon.mcgrath@dentons.com

Sarah Laren
Dentons Bingham Greenebaum LLP
300 West Vine Street, Suite 1200
Lexington, KY 40507
Telephone: (859) 288-4635
Email: sarah.laren@dentons.com

Charles E. Dorkey, III
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 905-8330
Email: charles.dorkey@dentons.com

*Attorneys for Plaintiff, Cabinets to Go*

# CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of April, 2023, I filed the foregoing with the Court's electronic filing system, which serves notice upon the following:

Michael Alston
Madeline Leonard Phifer
Daniel Esquivel
Husch Blackwell LLP
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone: 423.266.5500
Facsimile: 423.266.5499
E-mail: Michael.alston@huschblackwell.com
E-mail: madeline.leonardphifer@huschblackwell.com
E-mail: Daniel.esquivel@huschblackwell.com

Rebecca J. Johnson
Juan J. Perez
Perez Morris
8000 Ravines Edge Court, Suite 300
Columbus, OH 43235
rjohnson@perez-morris.com
jperez@perez-morris.com

*Attorneys for Defendant,*
*Qingdao Haiyan Real Estate Group Co., Ltd.*

Richard C. Mangelsdorf, Jr.
Matt Byron
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37027
(615) 499-7281
chuckmangelsdorf@mgclaw.com
matt.byron@mgclaw.com

*Attorneys for Scioto Valley Woodworking, Inc.*
*d/b/a Valleywood Cabinetry*

                                           */s/ V. Brandon McGrath*
                                           V. Brandon McGrath